2023 IL App (1st) 211475-U

No. 1-21-1475

Order filed February 14, 2023

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SUSAN M. HUTTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 21 L 50194 |
| ILLINOIS DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY; DIRECTOR OF THE ILLINOIS | ) | |
| DEPARTMENT OF EMPLOYMENT SECURITY; and | ) | |
| BOARD OF REVIEW, | ) | Honorable |
| | ) | John J. Curry, Jr., |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Board of Review's determination that plaintiff was ineligible for unemployment insurance benefits because she was not actively seeking work in the relevant period was not clearly erroneous, and the factual findings underlying that conclusion by the Board were not against the manifest weight of the evidence.

¶ 2    Plaintiff Susan Hutton appeals from an order of the circuit court affirming the decision of

the Board of Review (Board) of defendant Illinois Department of Employment Security

(Department) that she was ineligible for unemployment insurance benefits under the Unemployment Insurance Act (820 ILCS 405/100 *et seq.* (West 2020)) (Act) because she was not actively seeking work in the relevant period. Plaintiff contends that the Board's decision was erroneous. For the reasons stated below, we affirm.

¶ 3        Plaintiff applied to the Department for benefits under the Act in March 2020. She had been employed as a server or waitress by OHS Management Corporation ("Employer") from February 1991 until March 14, 2020.

¶ 4        In August 2020, the Department notified plaintiff that she would be interviewed by a Department claims adjudicator because a "question has been raised regarding your eligibility for unemployment insurance benefits." Plaintiff stated in the September 2020 interview that she was seeking work as a waitress or server by calling restaurants but was caring for her elderly uncle several days a week. The claims adjudicator asked her to document her job search from May through September 2020 and provide a medical note. Plaintiff provided a list of over 40 restaurants and bars she contacted from May through September 2020, a letter she sent Employer in May 2020, and a September 2020 physician's note.

¶ 5        Plaintiff's letter to Employer, dated May 18, 2020, began: "as of today, I have not received any type of letter about a return date for employment of Sunday May 17. A manager contacted me today to explain the situation, saying that the letter specified that if there is no reply by May 16, we are declining work." Plaintiff explained that she was caring for her elderly uncle and feared exposing him or herself to Covid, so she was willing to return to work when the governor issued an executive order allowing non-essential businesses such as Employer's club to reopen with social distancing and other mitigation. She believed such an order would be issued "around July."

¶ 6     The medical note said that plaintiff "was due to return to work" on May 17, 2020, but "she has not been able to return to work" because of Covid and "her severe immunocompromised state." The note asked that plaintiff be excused from work "during this time without penalty."

¶ 7     In September 2020, the claims adjudicator issued a decision finding plaintiff ineligible for benefits from May 10, 2020, onwards because she was not able to or available to work as required by section 500(C) of the Act. *Id.* § 500(C). The claims adjudicator found that she "conditionally narrowed her opportunities and ha[d] no reasonable prospects of securing work." Plaintiff sought reconsideration of the claims adjudicator's decision, which was denied in October 2020.

¶ 8     Plaintiff appealed from the claims adjudicator's decision, and a Department referee held a telephone hearing in November 2020. Plaintiff testified that she worked as a cocktail waitress for 29 years until March 14, 2020. When asked if she had any medical restrictions on her ability to work or choice of jobs, plaintiff noted past injuries to her arms and legs affecting her ability to lift. When asked if her written list of jobs sought was accurate, plaintiff said it was but added that, on medical advice, she also applied for jobs she could perform without close contact with others in light of Covid. She described four such jobs she sought, including a part-time job and two contract tracing positions. She did not include these jobs on her list because "as I understood it, I was to show jobs that I felt were concrete" acceptances or rejections, and she was still waiting for responses from those employers.

¶ 9     Plaintiff explained that in May 2020, Employer asked her to return to work. However, her physician recommended against returning to work because working in close proximity to others posed a risk due to Covid and her immunocompromised state. When asked why she applied for restaurant jobs despite that advice, plaintiff explained that she believed the governor would reopen

restaurants in June 2020 and "my doctor told me as long as safety precautions were in place, [such as] gloves, masks or a six-feet distance I would be okay."

¶ 10    The referee issued a decision in November 2020 concluding that plaintiff was ineligible for unemployment benefits from May 10 to May 23, 2020, because, contrary to section 500(C) of the Act, she failed to show that she was actively seeking suitable work during the benefit period. The referee found that her "medical restrictions limit her availability to work in a large segment of the labor market." Plaintiff's job search consisted "almost entirely of bar and restaurant jobs" and she was therefore "not seeking work within her medical restrictions."

¶ 11    Plaintiff appealed the referee's decision to the Board. She argued that she applied for non-restaurant jobs but did not list them because she had not received responses from those employers, and that she was available for the restaurant jobs on her search list because they were within her medical restrictions with proper precautions.

¶ 12    The Board affirmed the referee's decision in March 2021. The Board found plaintiff's hearing testimony and written arguments sufficient to decide the appeal without further evidence. The Board noted that plaintiff was "free to return to work" at Employer's club in May 2020 but declined based on the "high risk of serious illness if infected with Covid." Plaintiff's physician "did not want [her] working around the general public," the Board found, and restaurant work was "work she could not perform due to her risk status." While plaintiff testified that she sought work she could do at home, her job search history listed only restaurant positions. Noting that an "individual is actively seeking work when she makes an effort that is reasonably calculated to return her to the labor force," the Board found that plaintiff "provided materially inconsistent statements as to the occupations in which she sought work," and her "work search records, as well

as her statement to the local office, list only restaurant work being sought." The Board concluded that plaintiff was not eligible for benefits because she was not actively seeking work during the benefit period at issue, May 10 to May 23, 2020, as required by section 500(C) of the Act.

¶ 13    Plaintiff filed a complaint in the circuit court for administrative review of the Board's decision. She reiterated that she applied for jobs she could perform at home or without close contact with others as well as restaurant-related jobs, and that none of the jobs she applied for were contrary to her medical restrictions as she could work in a restaurant with outdoor dining and/or Covid mitigations such as masks and distancing.

¶ 14    In October 2021, the circuit court affirmed the Board's decision, finding it was not clearly erroneous. This appeal timely followed.

¶ 15    On appeal, plaintiff contends that the Board erred in denying her benefits under the Act. Her brief cites little legal authority, as required by Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), but we discern two principal contentions. First, she contends that the Board erred in finding that her physician said she could not work around the public. In support of this argument, she points to a second physician's note from March 2021, which we shall address below. *Infra* ¶ 22. Secondly, she contends that the Board erred in disregarding her testimony that her job search extended beyond restaurant jobs.

¶ 16    The Act (*id.* § 1100) provides that decisions of the Board are subject to judicial review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)). We review the Board's final decision rather than the decision of the Department referee or the circuit court. *Petrovic v. Dep't of Employment Security*, 2016 IL 118562, ¶ 22. In doing so, we apply different standards of review to issues of law, issues of fact, and mixed issues of law and fact. *Twyman v.*

*Dep't of Employment Security*, 2017 IL App (1st) 162367, ¶ 39. Issues of law are reviewed *de novo*. *In re Fatima A.*, 2015 IL App (1st) 133258, ¶ 59.

¶ 17     Factual findings are "*prima facie* true and correct" (735 ILCS 5/3-110 (West 2020)) and may be reversed only if against the manifest weight of the evidence. *Twyman*, 2017 IL App (1st) 162367, ¶ 39. In reviewing a factual finding, we generally defer to the Board as it weighs the evidence, evaluates witness credibility, and resolves conflicts in the evidence. *Id.* ¶ 40. A finding is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Fatima A.*, 2015 IL App (1st) 133258, ¶ 58. We should not reverse a finding of fact merely because the opposite conclusion is a reasonable one. *Id.* ¶ 63. We should affirm an administrative agency's decision where the issue before us is merely one of conflicting testimony and witness credibility, or where the record contains evidence to support the agency's decision. *Id.* ¶¶ 58, 63.

¶ 18     Once the facts and applicable law are settled, the issue becomes whether those facts satisfied the legal standard; that is, determining the legal effect of the determined facts. *Petrovic*, 2016 IL 118562, ¶ 21. That is a mixed issue of fact and law, reviewed for clear error. *Id.* A decision is clearly erroneous only if we are left, after reviewing the record as a whole, with the definite and firm conviction that a mistake was made. *Id.*

¶ 19     Section 500 of the Act concerns eligibility for benefits under the Act and provides in relevant part:

> "An unemployed individual shall be eligible to receive benefits with respect to any week only if the Director [of the Department] finds that:
>
> ***

C. He is able to work, and is available for work; provided that during the period in question he was actively seeking work and he has certified such. Whenever requested to do so by the Director, the individual shall, in the manner the Director prescribes by regulation, inform the Department of the places at which he has sought work during the period in question." 820 ILCS 405/500(C) (West 2020).

¶ 20    The Department has defined when a claimant is actively seeking work:

"(a) An individual is actively seeking work when he or she makes an effort that is reasonably calculated to return him or her to the labor force. Reasonableness is determined by factors including, but not limited to: the individual's physical and mental abilities, his or her training and experience, the employment opportunities in the area, the length of unemployment, and the nature and number of work search efforts in light of the customary means of obtaining work in the occupation.

b) An individual is not actively seeking work if he or she seeks work that is unrealistic in light of his or her physical or mental limitations." 56 Ill. Adm. Code 2865.115(a)-(b) (2019).

¶ 21    A claimant bears the burden of establishing her initial eligibility for benefits under the Act. *Petrovic*, 2016 IL 118562, ¶ 28 (citing 820 ILCS 405/500 (West 2012)). The Department requires that a claimant "show that he or she is conducting a thorough, active and reasonable search for appropriate work on his or her own by keeping records of what he or she is doing to find work." 56 Ill. Adm. Code 2865.100(a)(2) (2020). That record should include the names and addresses of the employers contacted; the dates, methods, and results of the contacts; and the types of work the claimant is seeking. *Id.* The claimant shall provide such written records to the Department

whenever requested, or when the claimant's work search is an issue in a claims adjudicator interview, appeal, or hearing. 56 Ill. Adm. Code 2865.100(b) (2020). Whether an applicant for benefits under the Act was actively seeking work for the benefit period at issue is a mixed question of fact and law reviewed under the clearly-erroneous standard. *Leach v. Dep't of Employment Security*, 2020 IL App (1st) 190299, ¶ 22.

¶ 22    Before considering the merits of this appeal, we note that plaintiff submitted to the circuit court, in addition to the September 2020 medical note submitted in the Department proceedings, another medical note from the same physician dated March 5, 2021. Plaintiff's written argument to the Board was filed in February 2021, and we have no indication from the record that the March 2021 medical note was submitted to the Board before its decision issued on March 12, 2021. In administrative review, "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court." 735 ILCS 5/3-110 (West 2020). Therefore, we shall not consider the March 2021 medical note in our review of the Board's decision that was made without it.

¶ 23    Here, the Department claims adjudicator told plaintiff to produce documentation of her job search, and she provided a list of over 40 restaurant jobs she sought from May through September 2020. It was not until her hearing testimony before the Department referee, on appeal from the claims adjudicator's decision denying her benefits, that she claimed to have also made efforts to find non-restaurant work she could do from home or without close contact with others. Especially in light of the Department's requirement to document one's job search and provide that documentation on request, the Board was not required to credit her testimony. In other words, plaintiff's written job search record, listing only restaurant jobs, supported a conclusion that she

looked for only restaurant jobs and such a conclusion was not against the manifest weight of the evidence.

¶ 24    Regarding the reasonableness of looking for only restaurant jobs, the Board had evidence from plaintiff's September 2020 medical note that she was in a "severe immunocompromised state" that should excuse her from work in light of the Covid pandemic. It is true that plaintiff told Employer she was willing to return to work when the governor allowed non-essential businesses to open with outdoor dining, masking, and other mitigation. It is also true that plaintiff testified that her physician told her working with such mitigation would be "okay." However, her physician's note was more categorical and unconditional than that. While the note did not expressly state that her physician "did not want [plaintiff] working around the general public," that finding by the Board is not against the manifest weight of the evidence when the note said plaintiff was in a "severe immunocompromised state" and therefore should be excused from work, and moreover did not mention the mitigations plaintiff described in her testimony.

¶ 25    The Department, in defining when a person is actively seeking work, has provided an example of a person not actively seeking work because the work she sought was unrealistic in light of her physical limitations: a woman "seven months pregnant, quit her job as an assembler because it was strenuous and required her to be constantly on her feet. She applies for work at a factory, as an assembler, under conditions essentially the same as those of her last job." 56 Ill. Adm. Code 2865.115(b) (2019). It was not clearly erroneous for the Board to find the instant case comparable: plaintiff could not work as a waitress in Employer's club because of Covid and her immunocompromised state, but in May 2020 was looking for very similar work. It was therefore

not clearly erroneous for the Board to conclude she was not actively seeking work as that term is used under the Act, and so was ineligible for benefits under the Act.

¶ 26    Accordingly, we affirm the order of the circuit court affirming the Board's decision.

¶ 27    Affirmed.